FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

RENEE JEAN N.,

                    Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                 Defendant.

NO: 2:18-CV-385-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 12. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Rosemary B. Schurman. Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 12, is granted.

## JURISDICTION

Plaintiff Renee Jean N.[2] (Plaintiff), filed for disability insurance benefits (DIB) on November 9, 2015, alleging an onset date of November 9, 2015. Tr. 171-75. Benefits were denied initially, Tr. 100-02, and upon reconsideration, Tr. 108-112. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 13, 2017. Tr. 40-69. On December 29, 2017, the ALJ issued an unfavorable decision, Tr. 21-34, and on November 16, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff was born in 1963 and was 53 years old at the time of the hearing. Tr. 152. She has a college degree and a teaching certificate. Tr. 171. She worked for the state patrol for ten years and for the Department of Social and Health Services as an eligibility worker for 17 years. Tr. 54.

Plaintiff testified that she quit her last job because, "I couldn't do the work. . . . I didn't have it in me anymore." Tr. 54. She could not think fast enough or remember information and was not processing the volume of work needed. Tr. 54. When she was having difficulty keeping up with her work and depressed she used alcohol, though she testified she is not an alcoholic. Tr. 55, 58. She has an eating disorder and said, "I've fried my brain," from lack of nutrition. Tr. 55-58. She has had nightmares, hallucinations and she has daily panic attacks. Tr. 58-59. Physically, she has osteoporosis which is worse in her hip and tailbone. Tr. 57. She testified that she cannot stand or sit for more than an hour or two. Tr. 57. She falls "all the time." Tr. 58.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since November 9, 2015, the alleged onset date. Tr. 23. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: tachycardia with palpitations; anorexia nervosa with bulimia; sacroiliac joint dysfunction; adjustment disorder with anxiety; depressive disorder; neurocognitive disorder; and alcohol abuse disorder. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

The claimant is limited to frequent performance of postural activities (balancing, stooping, kneeling, crouching, crawling, climbing) except the claimant can occasionally crawl and can occasionally climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme cold, vibrations, and hazards. The claimant is able to understand, remember, and carry out simple, routine, repetitive task[s] and instructions, and is able to maintain attention and concentration for two-hour intervals between regularly scheduled breaks. The claimant should work in a predictable environment with only simple changes, only simple judgment and decisionmaking, and no fast-paced production rate of work. The claimant should have no interaction with the public, and only occasional interaction with coworkers and supervisors.

Tr. 27.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 32. At step five, after considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 33. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 9, 2015, through the date of the decision. Tr. 34.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issue for review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly considered the medical opinion evidence;

3.      Whether the ALJ properly considered the lay witness statements;

4.      Whether the ALJ made proper RFC and step five findings; and

5.      Whether the ALJ properly considered the listings at step three.

ECF No. 10 at 7-21.

**DISCUSSION**

**A.      Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 10 at 11-13.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff's level of daily activity is inconsistent with Plaintiff's alleged limitations. Tr. 28. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815

F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ cited Plaintiff's report that she is independent with activities of self-care such as dressing, grooming and bathing; cares for a pet; prepares her own meals daily; does household chores such as washing dishes, making the bed, vacuuming, dusting, and laundry; performs yard work and gardens; is able to drive and can shop in stores; and handles her own finances. Tr. 28 (citing Tr. 245-47). The ALJ also observed that Plaintiff reported no difficulty with personal care or household chores. Tr. 28 (citing Tr. 422). On this basis, the ALJ concluded that Plaintiff's activities are "minimally limited" and are inconsistent with the severity of the symptoms alleged. Tr. 28. Plaintiff contends that these "sporadic and short term" activities do not contradict her testimony and are not consistent with the RFC finding. ECF No. 10 at 11. Even if these activities are not necessarily suggestive of the ability to do full-time work, the ALJ reasonably considered that

they are inconsistent with the level of limitations alleged in evaluating the reliability of Plaintiff's symptom claims.

Second, the ALJ found Plaintiff was noncompliant with treatment recommendations. Tr. 29. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity. 20 C.F.R. § 404.1530.

The ALJ observed that Plaintiff was advised to cease alcohol intake, attend alcohol rehabilitation, and go to the emergency room but she refused all recommendations, Tr. 589; she was advised to seek inpatient treatment for her eating disorder and refused, Tr. 375, 589; she refused medication to assist with alcohol withdrawal symptoms, Tr. 486; and she declined psychiatric consultation, counseling, or medication, Tr. 592. The ALJ noted that the record supports the

inference that Plaintiff sought treatment in order to obtain paid leave from her previous job rather than to get better as one provider noted she "is not wanting to work now or in the future."[3] Tr. 29,602. The ALJ observed that a claimant has a duty to follow prescribed treatment, especially if it may restore the ability to work. Tr. 29 (citing 20 C.F.R. § 404.1530). The ALJ concluded that Plaintiff has not put forth full effort to restore her functional capacity and that if her limitations were as severe as alleged, it would be reasonable to expect compliance with treatment recommendations. Tr. 29.

Plaintiff does not contend that she is compliant with treatment recommendations but asserts that her testimony should not be negated on that basis. ECF No. 10 at 12. She first asserts that she has good reason for not pursuing treatment recommendations since she could not afford to go to inpatient anorexia treatment. ECF No. 10 at 12. Actually, Plaintiff testified that the

---

[3] Plaintiff cites her work history in support of her symptom claims. ECF No. at 15 n.2. The claimant's work record is an appropriate consideration in weighing the claimant's credibility. *Thomas*, 278 F.3d at 958-59. However, the ALJ may also draw reasonable inferences regarding a claimant's motivation to work. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Here, the Plaintiff stated that she does not want to work which was reasonably considered by the ALJ in evaluating her symptoms claims.

inpatient program she considered would not take her insurance, but she also said, "I would've gone, if I could've been here [Spokane] and been around my family. But I had to go either to Minnesota or Seattle, and I wouldn't be able to see my family." Tr. 56. This indicates at least part of the reason she did not attend inpatient treatment for anorexia is that the location was not convenient or preferred, which does not necessarily excuse noncompliance. Even if her refusal of the anorexia inpatient treatment was excused for financial reasons, there is no evidence that her noncompliance with other treatment recommendations was excused for the same reason.

Next, Plaintiff suggests that her noncompliance is excused or caused by her mental impairment. ECF No. 10 at 12. When the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14. Although Plaintiff cites no evidence supporting the conclusion that her noncompliance is due to her impairment, ECF No. 10 at 12, the ALJ noted that Karen Larkin, LMHC, found Plaintiff has periods of noncompliance related to her mental disorder. Tr. 29

(citing Tr. 507). However, the ALJ gave little weight to Ms. Larkin's opinion for legally sufficient reasons which are not challenged by Plaintiff and the ALJ specifically determined the noncompliance finding is not supported by any significant evidence or narrative explanation. Tr. 29-30.

Lastly, Plaintiff contends that she is "fearful of taking pills for pain" based upon her sister's medical experiences. ECF No. 10 at 12. However, this is not a reasonable excuse for noncompliance and even if it is, it does not excuse noncompliance with other treatment recommendations, such as to seek emergency treatment, cease alcohol intake, attend alcohol rehabilitation, obtain a psychiatric consultation or attend counseling. Tr. 589, 592. Based on the foregoing, the ALJ reasonably found that Plaintiff's noncompliance with treatment detracts from her symptom claims and this is a clear and convincing reason supported by substantial evidence.

## B. Rilla Westermeyer, M.D.

Plaintiff contends the ALJ did not properly consider the opinion of treating physician, Rilla Westermeyer, M.D., and gave too much weight to the opinions of the medical expert, Ellen J. Rozenfeld, Ed.M., Psy.D., examining psychologist David L. Pounds, Ph.D., and reviewing physician Howard Platter, M.D. ECF No. 10 at 10-16. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

In August 2017, Dr. Westermeyer, a treating physician, completed a physical residual functional capacity form and listed diagnoses of anorexia nervosa, psychosis, depression, anxiety disorder, malnutrition, osteoporosis, and

chronic hip pain.  Tr. 621-24.  She opined that Plaintiff's pain and stress responses

are severe enough to interfere with the attention and concentration needed to

perform simple work tasks and that Plaintiff has numerous physical limitations

including:   the need to lie down about four hours in an eight-hour work day; can

sit for ten minutes, stand for 30 minutes, and walk for ten minutes at one time; can

sit for less than one hour a day; can stand and walk for less than one hour a day;

would need to take unscheduled breaks three times a day during a work day; can

occasionally lift and carry five pounds and frequently lift and carry less than five

pounds; and has some postural limitations.  Tr. 622-24.  Dr. Westermeyer also

opined that Plaintiff would be off task more than 30 percent of the time at work,

would miss four days of work per month, and could be expected to perform an

eight-hour workday on a sustained basis less than 50 percent of the time.  Tr. 624.

The ALJ gave very little weight to Dr. Westermeyer's opinion.  Tr. 31.

First, the ALJ found the opinion is "wholly unsupported by the record" as

the limitations assessed "would render the claimant essentially bedridden and

housebound" and that they "severely exceed the claimant's own testimony."  Tr.

31.  An ALJ may discount a physician's opinion when a claimant's own statements

differ from the medical opinion.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169

F.3d 595, 601-02 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir. 1989).  For example, Dr. Westermeyer indicated Plaintiff can sit and walk for

only ten minutes at a time and stand for 30 minutes at a time, and can sit, stand,

and walk for less than one hour a day, Tr. 622-23; but Plaintiff testified that she stand and sit up to two hours at a time,[4] Tr. 56. Tr. 28, 31; *see also* Tr. 249 (can walk a "couple miles at least" before stopping to rest; walking is "[n]ot really an issue;" and, "I can walk for quite a bit."). This is a specific, legitimate reason supported by substantial evidence. The ALJ's interpretation of the evidence is reasonable and this is a specific, legitimate reason supported by substantial evidence.

Second, the ALJ found Plaintiff's daily activities are incompatible with the level of limitation assessed. Tr. 31. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. Indeed, some of the activities cited by the ALJ appear to be incompatible with the severe limitations assessed by Dr. Westermeyer. For example, household chores like laundry, yard work, and gardening are reasonably construed to be incompatible with the severe lifting and other physical limitations assessed by Dr. Westermeyer. Tr. 28, 245-47, 422, 622-24. This is a specific, legitimate reason supported by substantial evidence.

---

[4] Plaintiff contends her ability to sit is qualified by her testimony that she sat on a ball at work and she sits sideways. ECF No. 13 at 3; Tr. 57-58. Nevertheless, the ALJ's interpretation of her testimony is reasonable.

Third, the ALJ found the check-box form completed by Dr. Westermeyer does not provide significant narrative justification for the extreme limitations assessed. Tr. 31. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. For this reason, individual medical opinions are preferred over check-box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo*, 871 F.3d at 677 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

Plaintiff contends Dr. Westermeyer's treatment notes support the limitations assessed, citing findings related to osteoporosis, complaints of pain and tenderness in the back and coccyx, complaints of inability to sit or stand for long, difficulty walking, purging, and observations of fatigue, thinness, and weakness. ECF No. 10 at 10-11 (citing Tr. 426-27, 436-37, 439, 445-46, 514). However, Dr. Westermeyer's findings on exam were largely normal and the limited findings do not reasonably support the extreme limitations assessed. Tr 433 ("very thin," rash), 437 ("very thin," nontender mass on chest, tenderness over coccyx and hip bones), 440 ("very thin," cried during visit, prominent tuborosity on right knee), 446 ("fatigued-appearing," tears regarding pain, antalgic gait, very thin and weak

appearing, tenderness over sacroiliac joint, obsessive thoughts regarding pain), 516-17 ("very thin," cried during visit, rash). Dr. Westermeyer also discussed medication and treatment for Plaintiff's complaints, but Plaintiff refused. Tr. 434 ("not interested" in medication for eating disorder), 436 ("not interested" in medication for eating disorder or osteoporosis), 440 ("reticent" to use medication for osteoporosis), 445 (has been given pain medication for hip pain but does not want to use it). In February 2017, Plaintiff reported she had an x-ray of her tailbone when she fell several years prior but was "unwilling to present for any imaging" at that time and was unwilling to try massage or physical therapy. Tr. 446. Accordingly, the ALJ reasonably concluded there is not sufficient justification for the limitations assessed. This is a specific, legitimate reason supported by substantial evidence.

Fourth, the ALJ found the opinion is inconsistent with the record as a whole and other opinion evidence. Tr. 31. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ credited the opinions of Dr. Rozenfeld, the medical expert, Tr. 44-52; Dr. Pounds, an examining psychologist, Tr. 399-403; and Drs. Eisenhauer and Rose, the state agency reviewing psychologists, Tr. 78-80, 93-95, all of whom assessed mental limitations consistent with the RFC finding and less severe than those assessed by Dr. Westermeyer. It is the ALJ's duty to resolve conflicts and

ambiguity in the medical and non-medical evidence. *See Morgan*, 169 F.3d at 599-600. It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750.

Plaintiff contends Dr. Rozenfeld and Dr. Pounds did not review treatment notes regarding anorexia with bulimia and therefore did not consider all of Plaintiff's impairments. ECF No. 10 at 14. Dr. Rozenfeld reviewed the record and noted Plaintiff had been diagnosed with an eating disorder. Tr. 45. She discussed the evidence of mental limitations throughout the record. Tr. 46-48, and when asked what would qualify Plaintiff's eating disorder under listing 12.13, Dr. Rozenfeld testified,

> She clearly does have eating disorder symptoms. . . . With regards to what I would be looking for [in order to meet or equal listing 12.13], would be hospitalizations, concerns; the level of treatment, which would then impact her ability to maintain attendance in a work setting. I would expect to see ongoing treatment records that are documenting the impact of the eating disorder on her functioning, overall, and I just don't see that.

Tr. 50-51. When asked whether Plaintiff's eating disorder indicates a more than moderate limitation in judgment and decision making, Dr. Rozenfeld noted Plaintiff has had a long history of eating disorder with a good work history and that her disorder did not dramatically impact her functioning. Tr. 51. Dr. Rozenfeld testified that she reviewed the mental status findings in the record and "I just don't

see a record with regard to cognitive functions and mental status findings that suggest marked limitations." Tr. 52. Contrary to Plaintiff's assertion, it is clear that Dr. Rozenfeld considered limitations from anorexia with bulimia in formulating her opinion.

Similarly, Plaintiff contends that Dr. Pounds did not address the impact of anorexia with bulimia upon Plaintiff's functioning. ECF No. 10 at 15. Dr. Pounds noted Plaintiff's report of an eating disorder since age 14, that she was evaluated by an inpatient clinic for eating disorders, and that she appeared to be significantly underweight. Tr. 399-401. He noted symptoms consistent with anorexia as part of his diagnostic impression and that her symptoms appear to be amenable with treatment with therapy and appropriate medication. Tr. 403. It is apparent that Dr. Pounds considered the impact of anorexia with bulimia in his evaluation and the ALJ appropriately credited his opinion.

The ALJ also credited the July 2016 opinion of Dr. Platter, the state reviewing physician. Tr. 31-32, 91-93. The opinion of an examining or treating physician may be rejected based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes*, 881 F.2d at 751-55 (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v.*

*Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Plaintiff contends the ALJ erred by giving significant weight to Dr. Platter's findings because he did not review evidence after August 2016 and provided minimal explanation for his findings.  ECF No. 10 at 13.  However, there are minimal findings suggestive of physical limitations in the record reviewed by Dr. Platter, despite Plaintiff's allegation of disability beginning in November 2015, and Plaintiff cites none.  Furthermore, notwithstanding a diagnosis of osteoporosis after Dr. Platter's assessment, Tr. 426, as discussed *supra*, there is little support in the record for any additional functional limitations.  Thus, the ALJ reasonably relied on Dr. Platter's opinion.

## C.    Lay Witness

Plaintiff contends the ALJ erred by rejecting the statements of her fiancé. ECF No. 10 at 19-21.  In December 2015, Plaintiff's fiancé completed a third party function report form and indicated Plaintiff is tired all the time, is unstable when she walks, sleeps on and off all day, does not like to take medicine, has little desire to eat, almost every physical function is affected, and her memory, concentration, and ability to follow instructions are impaired.  Tr. 201-08.  In June 2016, Plaintiff's fiancé completed another third party function report form and indicated similar observations, and also noted that Plaintiff's ability to lift, stand, sit, and see

are impacted, along with her memory, concentration, understanding, and ability to follow instructions.  Tr. 236-43.

The ALJ gave little weight to the function reports completed by Plaintiff's fiancé.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

First, the ALJ found the close relationship between Plaintiff and her fiancé suggest that the reports were "influenced in favor of the claimant by a desire to help."  Tr. 28.  Absent actual evidence that a lay witness is motivated by a desire to help the plaintiff, this is not a germane reason to discount lay witness testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009) (noting that lay witnesses may not be dismissed out of hand because they are inclined to be partial to the claimant; rather, the ALJ must point out "evidence that a specific [witness] exaggerated a claimant's symptoms in order to get access to his disability benefits"); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  Notwithstanding, this error was

harmless because the ALJ provided another germane reason for discounting the lay witness's statements. *See Carmickle*, 533 F.3d at 1162-63.

Second, the ALJ found Plaintiff's fiancé's statements are not supported by the record. Tr. 28. A lack of support from medical records is not a germane reason to give little weight to lay witness observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing. *Id.*; *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *but see Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony may be discounted if it conflicts with the medical evidence); *Bayliss,* 427 F.3d at 1218 (inconsistency with medical evidence constitutes germane reason); *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). Thus, the conflict with the medical evidence is not a good reason for rejecting the lay witness statement.

Third, the ALJ found Plaintiff's daily activities do not support the level of limitation alleged in Larry's statements. Tr. 28. An AJ may reject lay witness testimony that is inconsistent with the claimant's daily activities. *See Bayliss*, 427 F.3d at 1218. As discussed *supra*, the ALJ's reasoning on this issue is supported by substantial evidence and this is a germane reason for giving little weight to the lay witness statement.

**D. RFC and Step Five**

Plaintiff contends the RFC finding does not include all of Plaintiff's limitations, and that the ALJ erred at step five because the vocational expert's opinion was based on an incomplete hypothetical. ECF No. 10 at 7-16. The RFC is "the most [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ need only include credible limitations supported by substantial evidence. *Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC). Similarly, the ALJ's hypothetical to the vocational expert must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes that the ALJ erred in evaluating Plaintiff's symptom claims and the medical opinion evidence. As discussed *supra*, the ALJ's

reasonable consideration of Plaintiff's symptom claims and weighing of the medical opinion evidence was legally sufficient and supported by substantial evidence. The ALJ therefore properly excluded limitations found to be unsupported from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found to be credible and supported by substantial evidence in the record. The ALJ's reliance on the vocational expert's testimony in response to the hypothetical was therefore proper. *See id.*; *Bayliss*, 427 F. 3d at 1217-18.

## E.    Listing 5.08

Plaintiff contends the ALJ failed to properly consider her eating disorder at step three. ECF No. 10 at 16-19. At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition contained in the listings. *See* 20 C.F.R. § 404.1520(d). The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. An impairment matches a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098.

At step three, the ALJ considered listings 1.02 (major dysfunction of a joint) and 4.00 (cardiovascular disorder) for physical impairments, and listings 12.02

(neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.13 (eating disorders) for mental impairments, and concluded no listing is met or equaled.  Tr. 25.

Plaintiff contends the ALJ failed to consider her anorexia under listing 5.08 for "weight loss due to any digestive disorder."  ECF No. 10 at 17.  Listing 5.08 is met by demonstrating "weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period."  20 C.F.R. Pt. 404, App. 1 § 5.08.  Plaintiff cites seven BMI findings from November 2015 to April 2017 and asserts her counseling sessions with Ms. Larkin constitute treatment satisfying the listing.  ECF No. 10 at 18.

However, Plaintiff's condition does not fulfill the first criteria of the listing: "weight loss due to any digestive disorder."  20 C.F.R. Pt. 404, App. 1 § 5.08.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099.  Plaintiff does not cite any evidence of a digestive disorder in the record or even allege that she has a digestive disorder, ECF No. 10 at 16-19, and there is no suggestion of a digestive disorder in the record.  *See Xiong v. Sullivan*, 967 F.2d 597 (9th Cir. 1992) (unpublished) (finding listing 5.08 "simply inapplicable" because there was no evidence that the claimant's weight loss was due to a gastrointestinal disorder).

Furthermore, Plaintiff does not fulfill the second criteria of the listing: "weight loss . . . despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, App. 1 § 5.08. As discussed *supra*, the ALJ reasonably found that Plaintiff is noncompliant with treatment.

On reply, Plaintiff argues that her anorexia "medically equals" rather than meets listing 5.08. ECF No. 13 at 9. An impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b) (providing that if a claimant has a combination of impairments, no one of which meets a listing, the claimant's medical findings will be compared with those for "closely analogous listed impairments"). Here, the ALJ considered the most similar listed impairments to Plaintiff's various conditions: listings 1.02 (major dysfunction of a joint) and 4.00 (cardiovascular disorder) for physical impairments, and listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.13 (eating disorders) for mental impairments. Tr. 25. Plaintiff has cited no authority demonstrating how listing 5.08 for digestive disorders is "closely related" to anorexia nervosa/bulimia based on the symptom of weight loss alone. For these reasons, the ALJ's step three finding is legally sufficient.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 20, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge